FRANCES F. VYE *vs.* CITY OF MEDFORD.

Middlesex.    December 10, 11, 1928. — February 12, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Boundary. Fence. Way,* Public. *Adverse Possession. Evidence,* Presumptions and burden of proof.

A public way was laid out in 1857, its lines being described in the layout by metes and bounds to conform to a specified plan. Entry thereupon was made upon the way, and construction was completed in 1858. Inside the location of the way and along the travelled portion of it on one side the city built a fence at least as early as 1874. In the course of the construction of the way, a banking was constructed sloping downward from the fence to the side line of the way. The adjacent land was used for pasturage and the growing of hay, access thereto being had by a gate in the fence and a run-way down the bank. There was no actual use nor occupation of the banking by the owner of the adjacent land except for the use of the run-way. The owner always supposed that he owned to the fence, and had no actual knowledge of the layout of the way. The fence was repaired by both the city and the owner, although the owner did not know of the repairs made by the city. In 1926 the owner conveyed such adjacent land by a deed stating that one boundary was the said side line of the way, although the measurements in the deed indicated the fence as that boundary. In a petition subsequently brought in the Land Court by the grantee

for registration of his title to the land, the petitioner contended, under R. L. c. 53, § 1, that the banking should be included, and the city contended that the land was bounded by the side line of the way as designated in the layout. The trial judge found that the city built and repaired the fence for the purpose of public safety; that the petitioner's predecessor in title repaired it in order to keep in his cattle; that it was not built nor maintained as a boundary line fence; that there was nothing to put the city on notice that the petitioner's predecessor claimed an occupation adverse to the public easement beyond the side line of the way as located; and that the petitioner had acquired title only to such side line. A decree for the petitioner to that line only was ordered. *Held,* that

(1) Under the statute the burden was on the petitioner to show that the fence was a boundary line fence erected and maintained by him or his predecessor for a period of forty years under a claim to the banking adverse to the city;

(2) The rights of the public in the whole width of the way as laid out were not lost even if the way had not been used to its whole width; and the construction of the banking and the fence was a use of that part of the land for the purpose of a way;

(3) In view of the findings by the judge, the order for a decree was proper and it was affirmed.

PETITION, filed in the Land Court on August 27, 1927, for registration of the title to certain land in Medford.

The petition was heard by *Davis*, J. Material facts found and a decree ordered by him are described in the opinion. The respondent introduced in evidence the decree of the county commissioners laying out Winthrop Street, in which its lines were described by metes and bounds, to conform to a specified plan. The judge refused to give the following rulings, among others, requested by the petitioner:

"5. The burden is on the respondent city of Medford to prove that the land, claimed by the petitioner and alleged by the respondent city of Medford to be a part of the way known as Winthrop Street, is within the limits of said Winthrop Street, as said Winthrop Street was duly laid out, used and maintained and as it existed at the time of the filing of the petitioner's petition to register his title, or prior to May 26, 1917."

"7. There is no evidence to warrant a finding that the land claimed by the petitioner and alleged by the respondent city of Medford to be a part of the way known as

Winthrop Street was ever used for a highway, or ever became a part of the way known as Winthrop Street.

"8. The locating of bounds is no sufficient evidence, and no evidence at all, that the land of the petitioner, alleged by the city of Medford to be a part of the way known as Winthrop Street, was ever used as a part of said Winthrop Street.

"9. There is no evidence to warrant a finding that, after the decree of the county commissioners, except locating bounds, anything was ever done to lay out as a public highway that part of Winthrop Street claimed by the petitioner and alleged by the respondent city of Medford to be a part of said Winthrop Street.

"10. Upon all the evidence, fences, in the location as appears on the plan filed by the petitioner in this case, stood in said location, on the land claimed by the petitioner and his predecessors in title to be the line of the highway known as Winthrop Street, openly, notoriously, continuously and uninterruptedly for more than forty years prior to May 26, 1917, and by force of the statutes in such case made and provided, said location and the fences became the boundary line of said highway known as Winthrop Street."

The petitioner alleged exceptions.

*E. S. Abbott,* for the petitioner.

*J. N. Johnson,* City Solicitor, for the respondent.

SANDERSON, J. This is a petition to register title to land. The questions involved relate to the location of its westerly boundary line.

It appears from the decision of the judge of the Land Court that "The petitioner owns a tract of land in Medford bounded northerly by High Street, southerly by the Mystic Valley Parkway and westerly by the easterly line of Winthrop Street. The land slopes southerly from High Street to a brook near the Parkway, the grade of Winthrop Street being several feet above it. Along the easterly side of the travelled road, at the top of the banking, is a fence which has existed substantially in its present location since at least 1874. The petitioner contends that the easterly line of Winthrop Street is coincident with the line of this fence. The respondent city contends that the easterly line of Winthrop Street is the

line of the county road as located by a layout of the county commissioners in 1857. This line is along the foot of the banking. Both lines are shown on the plan filed in this case. The petitioner obtained title in 1926 from the trustees of the Alvin D. Puffer estate by a deed which described the land as bounded by the easterly line of Winthrop Street and by measurements which, although stated to be 'more or less', carried to the line of the fence. He was also told by his grantors that the fence marked his boundary line." The petitioner's predecessors in title for more than forty years before 1917 supposed "they owned to the line of the fence, and had no actual knowledge of the 1857 highway location."

The judge further stated that "the northerly portion [of the land] was fenced in for pasturage. The Puffers kept cattle in the pasture, and from time to time repaired and maintained the fence. There was a bar-way or gate-way in the fence with a run-way down the bank over which hay was hauled out from the southerly portion. There was a ditch running along the foot of the bank from near High Street southerly to the brook. Although there is some evidence that cows grazed on the banking between this ditch and the fence, . . . I find, that there was very little grass growing on the bank and no actual use or occupation of the strip now in dispute beyond the possible occasional straying of a cow onto it, and the use of the run-way across it. . . . After the layout by the county commissioners in 1857 it appears from the records of the selectmen of Medford that the town entered on the land so taken for the purpose of construction, and in 1858 completed the construction of the county road. I find that the banking was a part of such construction. I also find from the town records that in 1858 the town built a fence on said new county road between the bridge over the Mystic River to the south and High Street. In 1874 the town fenced Winthrop Street. In 1910 the town repaired the present fence. Mr. Puffer did not know of this last act by the town, . . . so far as the fence was built and maintained by the town, it was clearly for the purpose of safety in public travel. So far as it was repaired by the Puffers, it was for the purpose of keeping their cattle in. I do not find that it

was built or maintained as a boundary line fence. Neither do I find anything in the evidence that would tend to bring home to the town authorities knowledge of any claim by the Puffers of an occupation adverse to the public easement beyond the line of the highway as located by the county commissioners."

The strip of land in dispute has never been used as a part of the travelled way but so far as necessary has been used for banking in the construction of the highway. The judge found that the line to which the petitioner acquired title was the line of Winthrop Street as located as a county way in 1857, a line accurately determined by existing monuments and correctly shown on the filed plan. A decree for the petitioner to that line was ordered.

The petitioner's contention is based upon R. L. c. 53, § 1 (now virtually repealed. See St. 1917, c. 344, Part VI, § 1) which provided in part that "If buildings or fences have been erected and continued for more than twenty years, fronting upon or against a highway, town way, private way, . . . street, lane or alley . . . and from the length of time or otherwise the boundaries thereof are not known and cannot be made certain by the records or by monuments, such buildings or fences shall be taken to be the true boundaries thereof. If boundaries of such ways or places can be made certain any building or fence thereon may upon the presentment of a grand jury be removed as a nuisance unless it has continued at least forty years." This statute had its origin in St. 1734–5, c. 2, § 2, which, in its title and preamble, purported to be an act to prevent encroachments and encumbrances upon highways, and defined the rights as between adjoining owners and the public when an encroaching fence has been maintained a specified number of years. In *Commonwealth v. Tucker,* 2 Pick. 44, 46, the court referred to the statute as containing "a provision in favor of persons who have encroached and have had possession for a certain number of years." In *Plumer* v. *Brown,* 8 Met. 578, 581, the opinion stated that the statute was "not intended to protect individuals from the encroachments of the public, but to protect the public against the encroachments of individuals." In

*Cutter* v. *Cambridge*, 6 Allen, 20, the plaintiff's right to a title to the line of his fence was recognized if he could prove that the fence had been maintained under a claim of right for forty years. In *Winslow* v. *Nayson*, 113 Mass. 411, 421, the plaintiffs' rights were based upon the maintenance of "their fence in the same place" for forty years. In *Gifford* v. *Westport*, 190 Mass. 323, 324, and in *Smith* v. *Adams*, 206 Mass. 513, 514, the plaintiff's rights under the statute were said to be based on adverse possession. In *Frost Coal Co.* v. *Boston*, 259 Mass. 354, 359, the structures in question had been maintained by the petitioner and his predecessors in title. The history of the statute and the decisions under it point to the conclusion that the petitioner must fail unless he can prove that the fence was a boundary line fence erected and continued by him or his predecessors in title as claimants adverse to the town for the statutory period.

The rights of the public in the whole width of the way as located and laid out were not lost by using less than the whole width for the travelled way. *Harrington* v. *County Commissioners*, 22 Pick. 263, 265, 268. Compensation to landowners is based on the full width taken even though a part only is constructed for travel. *Como* v. *Worcester*, 177 Mass. 543. The use of a part of the land taken for an embankment to support the travelled way is a use of the land for a highway purpose. *Doon* v. *Natick*, 171 Mass. 228. A municipality is under an obligation to maintain railings where steep banks or dangerous declivities exist so near the travelled road as to expose people travelling thereon to injury. G. L. c. 84, § 15. *Sparhawk* v. *Salem*, 1 Allen, 30, 32. *Commonwealth* v. *Wilmington*, 105 Mass. 599, 601.

The petitioner had the burden of proving that he was entitled to have the strip of land in controversy registered. The findings of the judge of the Land Court on evidence not reported are final. G. L. c. 185, § 15. *Levenson* v. *Ciampa*, 251 Mass. 379, 382. *Boston Five Cents Savings Bank* v. *Massachusetts General Hospital*, 255 Mass. 583, 586. No error of law appears either in his refusal to give the rulings requested or in the order entered.

*Order for decree affirmed.*